IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANTUA COMMUNITY PLANNERS, et al., | : | CIVIL ACTION |
| | : | NO. 12-4799 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | December 11, 2013 |

## MEMORANDUM

Now before me is a motion for judgment on the pleadings by defendants City of Philadelphia and Jannie Blackwell seeking judgment in favor of defendants on Counts I, II, III, V and VI of plaintiffs' complaint. For the reasons that follow, I will grant defendants' motion in part and deny defendants' motion in part.

## BACKGROUND

Plaintiffs Mantua Community Planners, Inc., Samantha Monroe and Reverend Dr. Andrew Jenkins[1] claim that the City and Philadelphia City Councilwoman Jannie Blackwell deprived them of their Fourth Amendment right to be free from property seizure and of their First Amendment rights to free speech and assembly in violation of 42 USC § 1983. Dkt. No. 1 at ¶¶ 44, 57. Additionally, plaintiff Samantha Monroe asserts a negligence claim against Blackwell and an intentional infliction of emotional distress claim against Blackwell and the City stemming from an incident in which defendant Blackwell allegedly struck Monroe with her car. Id. at ¶¶ 75-101. Finally, Mantua Community Planners and Monroe assert claims against

---

[1] Although the headings in plaintiffs' complaint identify Counts I and II as having been brought only on behalf of Mantua Community Planners and Monroe and not Jenkins, allegations in Counts I and II of the complaint assert that Jenkins' property was lost or destroyed and that he was otherwise harmed as a result of defendants' alleged conduct. See e.g., Dkt. No. 1 at ¶¶ 21, 22, 52.

Blackwell and the City based on the theory of respondeat superior for alleged tortious conduct by defendants' agents.  Id. at ¶¶ 102-105.

Plaintiffs allege that in order to further her political agenda Blackwell caused Mantua Community Planners to be removed from its office space in a City building.  Id. at ¶¶ 19-25.  Plaintiffs claim that this removal resulted in the destruction of Mantua Community Planners' and Reverend Jenkins' personal property.  Id. at ¶¶ 22-24.  Plaintiffs also assert that Monroe attempted to speak out against the treatment of Mantua Community Planners at a neighborhood meeting where she was "surrounded" and placed "in fear of physical violence to her body."  Id. at ¶ 39.  After this meeting, Blackwell allegedly struck Monroe with her car in the parking lot.  Id. at ¶¶ 75-95.  Finally, plaintiffs claim that in the wake of this neighborhood meeting Blackwell's agents subjected Monroe to repeated instances of threats, intimidation and harassment at Blackwell's direction.  Id. at ¶¶ 97-101.

Defendants' motion seeks judgment on the pleadings against plaintiffs on all claims against the City -- except that of negligence -- along with all claims against Blackwell brought pursuant to the Pennsylvania Constitution.  Defendants also "seek[ ] to clarify that Plaintiffs state Section 1983 causes of action for violations of Plaintiffs' Fourth Amendment right to be free of property seizure, Fourth Amendment right to be free of excessive force, and First Amendment rights to free speech and assembly."[2]  Dkt. No. 8 at ECF p. 4.

I construe Counts I, II and III of plaintiffs' complaint, read together, to assert violations of plaintiffs' civil rights under 42 U.S.C. § 1983, Count IV to assert negligence stemming from the incident in which Blackwell allegedly struck Monroe with her vehicle and Count V to assert

---

[2]  I have not identified anything in plaintiffs' complaint or response to defendants' motion for judgment on the pleadings making a claim of excessive force in violation of the Fourth Amendment.

2

intentional infliction of emotional distress based on allegations of physical threats and harassment. I will address plaintiffs' Counts VII and VIII, which rely on the theory of respondeat superior, in my analysis of defendants' alleged liability under § 1983.

## STANDARD OF REVIEW

**I.     Motion for Judgment on the Pleadings**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). Rule 12(c) motions are reviewed under the same standard that applies to motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6). See Turbe v. Gov.'t of V. I., 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted). Accordingly, in deciding defendants' motion, I "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

Defendants' motion will be granted if plaintiffs have not articulated enough facts "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is not enough for plaintiffs to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). The Court "may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.

3

2009); see also Iqbal, 556 U.S. 662, 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## DISCUSSION

### I.   Alleged Constitutional Violations

Plaintiffs assert claims against Blackwell and the City for violations of their constitutional rights pursuant to 42 U.S.C. § 1983. I will address the claims against each defendant in turn.

#### A.   Blackwell

Plaintiffs assert several constitutional violations against Blackwell including a claim of property seizure in violation of the Fourth Amendment and infringement of their right to free speech and their right to assemble in violation of the First Amendment. Dkt. No. 1 at ¶ 44.

##### 1.   Property Seizure

Plaintiffs have pled facts alleging an unconstitutional taking of their property. They claim that Blackwell caused the destruction of $400,000 worth of property and records belonging to Jenkins and $20,000 worth of property and records belonging to Mantua Community Planners. Pl.'s Compl. at ¶¶ 21-23. Monroe also alleges damage to her clothing, goods, personal items and vehicle. Id. at ¶¶ 71, 92. Plaintiffs assert that because their property was destroyed without notice or opportunity to be heard they are entitled to relief pursuant to § 1983. Id. at ¶¶ 19, 53.

A procedural due process violation "is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Zinermon v. Burch, 494 U.S. 113, 126 (1990). To demonstrate the requisite absence of due process, plaintiffs must exhaust state remedies to plead intentional deprivation by the

State.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Therefore, "in order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that were available to him or her, unless those processes are unavailable or patently inadequate."  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); see also, Jackson v. City of Stone Mountain, 232 F. Supp. 2d 1337, 1368 (N.D. Ga. 2002) ("[P]laintiffs must show that they have exhausted whatever post-deprivation state remedies are available, if any such remedies exist."). These requirements "flow from the Supreme Court's statement that random, unauthorized deprivations of property by state officials, whether intentional or negligent, do not violate due process if there is an adequate state post-deprivation remedy."  Willard v. Pa. Soc. for the Prevention of Cruelty to Animals, No. 11-04543, 2012 WL 1392657, at *5 (E.D. Pa. Apr. 23, 2012), citing Hudson, 468 U.S. at 533; and Paratt v. Taylor, 451 U.S. 527, 537-43 (1981).

In Pennsylvania, "a person aggrieved by search and seizure, whether or not executed pursuant to a warrant, may move for return of the property on the ground that he or she is entitled to lawful possession thereof."  Pa. R. Crim. Pro. 588.  Though plaintiffs have alleged facts supporting deprivations of property, they have failed to allege the necessary exhaustion of post-deprivation state remedies.  Plaintiffs' complaint makes no reference to any attempt to have their property returned to them.  In order to challenge the adequacy of available state remedies, plaintiffs must first assert that they availed themselves of those remedies.  Willard, 2012 WL 1392657, at *6.

Pursuant to Rule 15, I will grant plaintiffs leave to amend this claim to the extent that they can assert facts demonstrating that they pursued post-deprivation state remedies to no avail. See Welsch v. Twp. of Upper Darby, No. 07-4578, 2008 WL 3919354, at *5-6 (E.D. Pa. Aug. 26, 2008) (finding that Pennsylvania Rule of Criminal Procedure 588 is an adequate post-

5

deprivation state remedy); Taylor v. Naylor, No. 06-041826, 2006 WL 1134940, at *4 (W.D. Pa. Apr. 26, 2006) (same); Marsh v. Ladd, No. 03-5977, 2004 WL 2441088, at *7 (E.D. Pa. Oct. 27, 2004) (same); Potts v. City of Phila., 224 F. Supp. 2d 919, 938 (E.D. Pa. 2002) (same).

> 2.   **Free Speech**[3]

>> a.   **Mantua Community Planners**

Mantua Community Planners has asserted a claim against Blackwell for violation of its First Amendment right to free speech. Mantua Community Planners alleges that on May 19, 2011 it was locked out of its office space in a city building, which it occupied by "agreement." Id. at ¶ 24. Plaintiffs also assert that Blackwell, "in her capacity as a City Councilperson had ordered Defendant's, City, Department of Parks and Recreation [sic] to deny further access to the building by Plaintiff, Community." Dkt. No. 1 at ¶¶ 19-20. Plaintiff claims that Mantua Community Planners and others conducted protests "object[ing] to the unwanted takeover of Mantua Community Planners, Inc." and that at one such meeting Blackwell "silenced anyone who disagreed with [her] . . . [by] intimidation, show of force and/or physical violence." Id. at ¶ 37.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. 1. Because Mantua Community Planners has not identified any law, policy or regulation that abridges its freedom of speech, or any time, place, or manner restriction placed on its speech by Blackwell, I will construe plaintiffs' complaint as attempting to state a First Amendment retaliation claim by asserting that Mantua Community Planners was removed from its office space in retaliation for some protected political speech.

---

[3] I find no facts in plaintiffs' complaint supporting a § 1983 claim based on violation of plaintiff Reverend Jenkins' First Amendment right to free speech; therefore I will limit my review to the claims articulated by the other two named plaintiffs despite plaintiffs' assertion that Reverend Jenkins was an intended plaintiff on all claims. Dkt. No. 9 at 7.

The Court of Appeals has held that in order to make such a claim, plaintiffs must prove the following: "(1) that [plaintiff] engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004), citing Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997). In cases where plaintiff is a private citizen and not a public employee, the speech need not address a matter of public concern in order to qualify as protected speech. Eichenlaub, 385 F.3d 274 at 282. However, merely alleging that defendant "set in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict [a] constitutional injury" will not be sufficient to satisfy the causation element of a retaliation claim. See Grimm v. City of Uniontown, No. 06-1050, 2008 WL 282344, at *25 (W.D. Pa. Jan. 31, 2008).

Importantly, Mantua Community Planners has not alleged that it was locked out of its office space in response to or because of any protected speech. Rather, it asserts that defendant Blackwell "acted to take control of" Mantua Community Planners, "to place individuals loyal to her and her political aspirations in key positions . . . and/or destroy [Mantua Community Planners] and replace it with an organization (Mantua Community Improvement Committee) subservient to her control and political objective . . . and guarantee that organization would remain politically supportive of [her] and her agenda." Id. at ¶ 29. Mantua Community Planners has also not alleged that it was itself "silenced" by Blackwell at a meeting or protest. Instead, Mantua Community Planners seems to rely on Monroe's experience to state its own claim of deprivation of First Amendment protected speech.

In their complaint, plaintiffs repeatedly assert that Mantua Community Planners was locked out of its office space "out of malice" on the part of Blackwell and her desire to

consolidate political power.  Id. at ¶¶ 28-31.  Even if true, such a motive does not itself give rise to a First Amendment claim.  Assuming arguendo that Blackwell's alleged conduct is sufficient to constitute adverse action by a state actor, I find that plaintiffs have not pled sufficient facts to support the first and third elements of a First Amendment retaliation claim.[4]  Plaintiffs have provided no more than the bald assertion that they "believe that shortly after the said meeting Defendant, Blackwell, in an attempt to intimidate the members of Plaintiff, Community and/or render Plaintiff, Community impotent, ordered agents, servants, workers employees of Defendant, City to destroy property of the Plaintiffs Community and Jenkins, located within 3320 Haverford Avenue, Philadelphia, PA."  Dkt. No. 1 at ¶ 41.  Absent allegations of specific facts supporting plaintiffs' claim that Blackwell caused them to suffer an adverse action because of Mantua Community Planners' exercise of its right to protected speech, this claim is insufficient under Twombly.  However, I will grant plaintiffs leave to amend to the extent that they can allege facts specific facts supporting Mantua Community Planners' own First Amendment deprivation of protected speech, apart from plaintiff Monroe's First Amendment claim, and a causal relationship between such a deprivation and any adverse action taken against it.

---

[4]  If in an amended complaint plaintiffs assert that Mantua Community Planners was removed from its office space in retaliation for some protected political speech the amended complaint will be sufficient to survive a motion for judgment on the pleadings.  However, plaintiffs' amended complaint will not survive a motion for summary judgment absent any property interest in the office space from which Mantua Community Planners was allegedly removed.  Denial of continued use of that space will not constitute adverse action by the state unless Mantua Community Planners asserts that it had a legitimate property interest in the office space.  See e.g., Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972) ("Property interests, of course, are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.")  Plaintiffs will be required to establish the nature of the "agreement" with the City for use of the office space in order to show that an adverse action was taken.

### b. Monroe

Plaintiff Monroe also has asserted a claim against defendant Blackwell for violation of her First Amendment right to free speech. Monroe claims that she attended a neighborhood meeting in order to express her concern and displeasure regarding the actions taken against Mantua Community Planners, and was intimidated by "agents, servants, workers [ ] [and] employees of Defendant [ ] City [ ] and/or Defendant [ ] Blackwell," who surrounded her as she attempted to speak. Dkt. No. 1 at ¶ 38. Monroe claims that this caused her to fear "physical violence to her body," causing her to silence herself at the meeting. Id. at ¶ 39.

Plaintiff Monroe also claims that defendant Blackwell retaliated against her for her attempted speech at the neighborhood meeting by subjecting Monroe to "physical threats to her wellbeing, mental torture and harassment at the direction of and/or to curry favor with Defendant [ ] Blackwell." Id. at ¶ 60. Monroe states that these threats and harassment include the following:

> a) being struck by a car driven by [d]efendant [ ] Blackwell;
> b) being watched;
> c) having notes pushed under her door threatening to kill her;
> d) verbal threats to kill her;
> e) almost being run over by a car, which then stopped and the driver, a City employee, yelled to her "you're the bitch that said Jannie hit you";
> f) having things left in her yard including but not limited to dead animals;
> g) being followed in her neighborhood;
> h) individuals ringing her door bell and/or knocking on her door at all hours of the day and night.

Id. at ¶ 61.

As with plaintiff Mantua Community Planners' First Amendment retaliation claim, "the threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." Eichenlaub, 385 F.3d at 282. Monroe alleges that she was engaging in protected

9

speech at the neighborhood meeting when she was intimidated into silence, that her attempted speech resulted in several instances of government retaliation and that the alleged retaliation was a result of her attempted speech at the meeting. These allegations represent each of the three elements of a First Amendment retaliation claim. Id. at 282. Though Monroe has not elaborated on these alleged instances of retaliation, at this stage I find that she has alleged sufficient "'facts to raise a reasonable expectation that discovery will reveal evidence of' [conduct constituting government retaliation]." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), citing Twombly, 550 U.S. at 556. Therefore, I will deny defendants' motion to enter judgment on the pleadings against plaintiff Monroe for her First Amendment retaliation claim pursuant to §1983.

### 3. Assembly

The First Amendment also protects an individual's right to expressive association. Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984). Specifically, it protects the rights of individuals to: (1) "enter into and maintain certain intimate human relationships" absent undue government interference; and (2) "engage[] in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." Id. at 617-18.

Mantua Community Planners asserts that it "believe[s] that defendant [Blackwell] . . . remove[d] the ability of individuals who do not go along with defendant Blackwell's agenda to assemble." Dkt. No. 1 at 55-56. However, beyond this conclusory statement plaintiff has not alleged any facts in support of its claim. This bare assertion is insufficient to satisfy the Twombly pleading requirements, and does not itself give rise to a viable § 1983 claim based on violation of plaintiff's First Amendment right to assemble. Pursuant to Rule 15, plaintiffs will be

permitted to amend the complaint in order to assert facts demonstrating unconstitutional interference by defendants.

### B.     City of Philadelphia:  Monell Liability

Plaintiffs attempt to assert a claim for municipal liability against the City for the alleged violations of their constitutional rights by stating, inter alia, that "[t]he City of Philadelphia is responsible for [Monroe's] injuries caused by Councilwoman Blackwell and/or any other City employee under a theory of respondeat superior."  Dkt. No. 1 at ¶ 103.  It is well established that there is no § 1983 liability based on respondeat superior.  Stewart v. Phila. Hous. Auth., 487 F. Supp. 2d 584, 591 (E.D. Pa. May 16, 2007), citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (additional citations omitted).  Rather, in order to establish the City's liability for a claim pursuant to § 1983, plaintiffs must demonstrate that the City implemented a policy or custom that caused the alleged constitutional violation.  Monell v. Dept. of Soc. Servs., 436 U.S. 658, 692 (1978).  Merely alleging constitutional violations on the part of a city employee is insufficient to give rise to a claim of municipal liability.  Id. at 691.  Plaintiffs must also allege that the City "acted deliberately and was the moving force behind the deprivation; and . . . his injury was caused by the identified policy or custom."  Thomas-Warner v. City of Phila., No. 11-5854, 2011 WL 6371898, at *9-10 (E.D. Pa. Dec. 20, 2011), citing Pelzer v. City of Phila., 656 F. Supp. 2d 517, 531 (E.D. Pa. 2009).

Plaintiffs have neither pled nor proved a municipal policy, custom or practice sufficient to state any § 1983 claims against the City for any of the alleged constitutional violations plaintiffs assert.  Recognizing that leave to amend should be "freely given when justice so requires," I find that leave to amend is appropriate here in order to grant plaintiffs the opportunity to allege sufficient facts to allow the Court to draw a reasonable inference that the

11

City implemented a policy or custom which is the "moving force" behind each of the constitutional violations alleged.[5]

## II.     Liability Under the Pennsylvania Constitution

Plaintiffs also claim that the alleged violations of their rights under the U.S. Constitution are actionable as violations of the Pennsylvania Constitution. Dkt. No. 1 at ¶ 48. Though federal constitutional violations are actionable pursuant to § 1983, "there is no statutory parallel to § 1983 under Pennsylvania state law, i.e., there is no statutory cause of action which permits individuals to sue Pennsylvania state actors for violations of the Pennsylvania Constitution." See Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006). Similarly, "there is no common law cause of action because the Pennsylvania Supreme Court has not recognized a Bivens-like claim for violations of the Pennsylvania Constitution." King v. Ridley Twp., No. 07-704, 2007 WL 2071871, at *5 (E.D. Pa. July 17, 2007).

Plaintiffs are denied leave to amend these claims pursuant to the Pennsylvania Constitution because amendment would be futile. Though Rule 15 of the Federal Rules of Civil Procedure dictates "that leave to amend shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), "the grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Id. at 182. Amendment is futile when "the complaint, as amended, would fail to state a claim upon which

---

[5]     Plaintiffs must provide more than "labels and conclusions, and a formulaic recitation of a cause of action's elements" in order to survive a subsequent motion on the pleadings. Twombly, 550 U.S. at 545.

12

relief could be granted." In re Merck & Co. Sec., Derivative, & ERISA Litig., 493 F.3d 393, 400 (3d Cir. 2007); see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).").

## III.     Negligence[6]

Plaintiffs assert negligence claims against the City and Blackwell based on allegations that Blackwell struck plaintiff Monroe with her car immediately following the neighborhood meeting.[7] Dkt. No. 1 at ¶ 83. Defendants do not seek judgment on Monroe's negligence claim against Blackwell. However, defendants assert that the City is immune from liability for plaintiff's state law tort claims pursuant to the Pennsylvania Political Subdivision Tort Claims Act. Dkt. No. 8 at 8. The PSTCA immunizes municipalities and municipal employees from tort liability absent a showing of willful misconduct. 42 Pa. Cons. Stat. §§ 8542, 8550. Generally, "willful misconduct" is equated with the term "intentional tort." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994), citing King v. Breach, 540 A.2d 976, 981 (Pa. Commw. Ct. 1988). Though the PSTCA does not "immunize a municipal defendant or political subdivision against a federal cause of action," namely a § 1983 claim, the PSTCA will preclude claims against a municipality for the negligence of its employees. Wiehagen v. Borough of N. Braddock, 559 A.2d 991 (Pa. Commw. Ct. 1989). However, certain conduct is excepted from the PSTCA

---

[6]     In their motion for judgment on the pleadings defendants identify a claim by plaintiffs for negligence against the City. Dkt. No. 8 at 4, 6. I find no such claim in plaintiffs' complaint.

[7]     Though unspecified in plaintiffs' complaint, I will assume that defendant Blackwell is sued in her individual capacity for this negligence claim, as the Pennsylvania Political Subdivision Tort Claims Act would immunize her as a municipal employee from liability for all conduct not rising to the level of willful misconduct. Because plaintiffs plead negligence rather than intentional misconduct, the PSTCA operates to immunize defendant Blackwell in her official capacity.

13

immunity, including, inter alia, the negligent "care, custody, or control of personal property." 42 Pa. Cons. Stat § 8542(b).

Monroe claims that the City is liable for Blackwell's alleged negligence in operating her vehicle based on the theory of respondeat superior. Id. at ¶ 103. The City is entitled to immunity from liability pursuant to the PSTCA unless the alleged conduct falls under one of eight enumerated exceptions. 24 Pa. Cons. Stat. § 8542(b). Monroe has not alleged which if any of these exceptions would apply to her negligence claim against the City arising out of the alleged incident with defendant Blackwell. Therefore, to the extent that an exception to the PSTCA immunity exists, I will grant Monroe leave to amend her claim of negligence against the City pursuant to Rule 15.

## IV. Intentional Infliction of Emotional Distress

Plaintiff Monroe also makes a claim of intentional infliction of emotional distress against defendants based on the alleged "physical threats to her wellbeing, mental torture and harassment." Dkt. No. 1 at ¶ 98. She further alleges that she suffered a "medically determinable mental impairment which prevented . . . [her] from performing all or substantially all of the material acts and duties which constitute [her] usual and customary daily activities . . ." Id. at ¶ 98.[8] Defendants move for judgment on the pleadings with respect to plaintiffs' claim for IIED against the City claiming immunity pursuant to the PSTCA. Dkt. No. 8 at ECF p. 8. Although the PSTCA does not provide immunity for intentional torts such as IIED, I find that plaintiffs' complaint fails to state a claim for IIED as against both the City and Blackwell.

In Pennsylvania, to establish a prima facie intentional infliction of emotional distress claim, plaintiff must plead facts supporting three elements: (1) A person who by extreme and

---

[8] Plaintiffs' complaint contains two paragraphs numbered 98. This citation refers to the second.

outrageous conduct (2) intentionally or recklessly causes (3) severe emotional distress to another. See e.g., Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). While Pennsylvania has recognized this cause of action, courts have limited recovery to only the most egregious of cases. Hoy v. Angelone, 691 A.2d 476, 482-83 (Pa. Super. Ct. 1997).

> Courts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven. Indeed our Superior Court has noted "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" . . . Described another way, "it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."

Estate of Henderson v. City of Phila, No. 1585, 2001 WL 34316334, at *323 (Pa. Ct. Comm. Pls. Nov. 9, 2001), quoting Hoy v. Angelone, 691 A.2d 476, 753-54.

Though Monroe enumerates seven examples of alleged threats, intimidation and harassment in support of her intentional infliction of emotional distress claim against defendant Blackwell, the single paragraph in the complaint describing this conduct lacks the specificity necessary to demonstrate that it was extreme and outrageous. Dkt. No. 1 at ¶ 98. Further, in pleading this claim, Monroe seeks to "incorporate by reference" all other paragraphs contained in the complaint. Id. at 96. Presumably, plaintiffs intend for paragraphs 82-95 to inform and elucidate the IIED claim; however those paragraphs specifically assert that the alleged incident with Blackwell was the result of negligence rather than any intentionality on Blackwell's part. If plaintiffs intend to plead in the alternative as to this incident, they must do so explicitly in order to successfully state both a claim for negligence and for IIED. I will grant leave to amend to the

extent that plaintiffs can assert facts demonstrating extreme and outrageous conduct on the part of Blackwell.

An appropriate Order follows.